IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Daniel C. Swanson,            )
                              )
        Plaintiff,            )
                              ) Case No. 1:04-CV-454
    vs.                       )
                              )
McKesson Corporation, et al., )
                              )
        Defendants.           )

Memorandum and Order

Plaintiff initiated this action against his former employer and its executive, Jack Rupprecht, after his employment was terminated in 2003. Pursuant to an amended complaint filed on September 15, 2004, he asserts claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Ohio Revised Code ("O.R.C.") § 4112.14; violation of Ohio public policy; and breach of contract. This matter is now before the Court upon Defendants' motion for summary judgment (Doc. 22) and Plaintiff's motion for leave to file a surreply memorandum (Doc. 26).

A. Background

Defendant McKesson Corporation hired Plaintiff as an Account Executive in January 2001 when Plaintiff was 51 years of age. He was a successful salesperson to

the hospitals assigned to him through April 2003, exceeding annual sales quotas. The majority of his sales during that time period were to two of the 18 hospitals assigned to him: Fairfield Medical Center and Greene Memorial Hospital. In April 2003, Defendants restructured their sales force to reduce significantly the number of accounts assigned to each Account Executive. The number of accounts assigned to Plaintiff was reduced from 18 to four. Each of the other Account Executives was also assigned four or five accounts. Defendants assigned to Plaintiff the four accounts, with the exceptions of Fairfield Medical Center and Greene Memorial Hospital, on which he had spent the majority of his time prior to the restructuring. Defendants represent that they attempted to assign accounts to all of the Account Executives in accordance with that principal, and Plaintiff has offered no evidence to the contrary.

Defendants represent that they did not assign the Fairfield Medical Center and Greene Memorial Hospital accounts to Plaintiff because those two customers had either complained about Plaintiff or asked that he be replaced on their accounts. Plaintiff has not identified evidence to the contrary. In any event, Plaintiff made no sales to his four accounts from April 2003 until the effective date of his discharge in December 2003.

In June 2003, Jack Rupprecht and Plaintiff's direct supervisor, Jay Roche, counseled Plaintiff about his failure to make progress toward his sales quota since the restructuring. Mr. Rupprecht made a number of specific suggestions for improving sales performance. On July 7, 2003, Mr. Rupprecht sent Plaintiff a message by e-mail asking him to report his progress with respect to those suggestions. The uncontroverted evidence

2

establishes that Plaintiff did not respond to that e-mail. Subsequently, Defendants placed Plaintiff and two other Account Executives without sales since the restructuring on improvement plans. One of the other two Account Executives placed on such a plan was under forty years of age. Defendant declined to place other Account Executives without sales on improvement plans. It represents that it did not do so because all but one of those Account Executives was new and the other, who was senior in tenure to Plaintiff, had sales in the "funnel," allaying Defendants' concerns about his ability to meet his sales quota.

Plaintiff's improvement plan may not have become effective until October 9, 2003. He had not made sales by October 31, 2003, when Defendants informed him that his employment would be terminated. Defendant Rupprecht and Jay Roche jointly made the decision to terminate Plaintiff's employment.[1] Defendants have articulated the reason for the termination as follows:

> McKesson terminated Plaintiff because, as of October 31, 2003, he had failed to make any progress on his year-to-date sales quota and, in the judgment of his sales management team, was not well-positioned to improve his sales results during the current fiscal year. (Rupprecht Aff. ¶6; Pl. Dep. 98-100, 127, Ex.9.) Plaintiff himself admits that, between April 2003 and his termination on October 31, 2003, he did not make any sales.

---

[1] Plaintiff attempts to create a genuine issue of material fact with respect to the identity of the decision-maker by reference to Jack Rupprecht's deposition wherein he testified that Jay Roche had made the decision. An errata sheet attached to that deposition in conformity with Rule 30(e) of the Federal Rules of Civil Procedure demonstrates that Mr. Rupprecht corrected the testimony to state that he and Mr. Roche made the decision jointly.

>(Pl. Dep. 95.)  And, when Rupprecht offered Plaintiff specific suggestions for improving his sales prospects in June 2003 and asked Plaintiff to keep him posted on his progress, Plaintiff did not bother to respond and offers no evidence that he, in fact, followed Rupprecht's direction.  (Pl. Dep. 125-26; Rupprecht Dep. 71, 80, 86, 96.)  Rupprecht determined, based on the fact that Plaintiff had not made any sales as of October 31, 2003 and had not bothered to respond to Rupprecht's earlier e-mails, that Plaintiff's employment should be terminated.  (Rupprecht Dep. 95; Rupprecht Aff. ¶6.)

Defendants' memorandum in support, pp.8-9.  Plaintiff has not introduced evidence concerning the fate of the other Account Executives placed on improvement plans in 2003.  Defendant replaced Plaintiff with an individual who was not significantly younger than Plaintiff.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on May 14, 2004.  On the basis of that filing date, Defendants contended for the first time in their reply memorandum that Plaintiff's claims are time-barred to the extent that they are based upon events prior to the 300-day period preceding that charge.  In response, *inter alia*, to that contention, Plaintiff filed a motion for leave to file a surreply memorandum.  While some of the arguments he raises in the surreply memorandum could have been raised earlier, their insertion in this matter in the form of the surreply memorandum has not altered the Court's view of the evidence in this matter.  Because the surreply memorandum does address a matter not raised by Defendants until the filing of their reply memorandum, the Court **GRANTS** Plaintiff's motion for leave to

file a surreply memorandum (Doc. 26). The Court has considered that memorandum and the appended affidavit in its analysis of the issues and evidence in this matter.

Plaintiff asserts age discrimination claims under the ADEA and the parallel Ohio statute on the basis of his assignment in the April 2003 restructuring, his placement on an improvement plan in July 2003, and the termination of his employment in October 2003. He alleges that Defendants subjected him to treatment less favorable than that accorded to similarly situated significantly younger employees. He further alleges that the termination of his employment was an act of intentional discrimination. He alleges that those acts amounted to violations of Ohio's public policy as embodied in the ADEA and the parallel Ohio statute. Finally, he alleges that Defendant breached its contract with him by failing to pay him commissions on his 2003 sales.

Defendants have moved for summary judgment with respect to all of Plaintiff's claims. In response to their motion, Plaintiff tacitly concedes that he cannot, as a matter of law, establish liability with respect to his public policy and retaliation claims. Moreover, he concedes that he cannot, as a matter of law, establish liability against Defendant Rupprecht under the ADEA. He has not sued Defendant Rupprecht for breach of contract. The claims addressed by the Court in this Memorandum and Order are, therefore, his age discrimination claim under the ADEA against the corporate Defendants, his age discrimination claim under Ohio law against all Defendants, and his breach of contract claim against the corporate Defendants.

B.  The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to

6

entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

    C. Analysis

        1. Age Discrimination

Plaintiff asserts age discrimination claims in accordance with two different models. With respect to the ultimate termination of his employment, he alleges both discriminatory discharge and disparate treatment. He also alleges disparate treatment with respect to his assignments in the April 2003 restructuring and his placement on an improvement plan in July 2003.

Plaintiff has not identified direct evidence of discrimination with respect to any of his age discrimination claims. He has directed the Court's attention to the fact that Jay Roche, his direct supervisor, may have referred to him as the "old guy" on occasion. The cited evidence does not tie the comment to any adverse employment decision. Nor does the evidence, when considered in context, give rise to an inference of age-related bias on the part of Mr. Roche. It is merely evidence of the the sort of stray remark that is routinely dismissed as a basis for an inference of an intent to discriminate. See, e.g., Rosso v. A.I. Root Co., 97 Fed. Appx. 517, 520 (6th Cir.), cert. denied, __ U.S. __, 125 S.Ct. 617 (2004); Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 549 (6th Cir. 2004). Accordingly, Plaintiff must establish his age discrimination claims by circumstantial evidence.

In order to establish a prima facie case of discriminatory discharge under either the ADEA or Ohio law, Plaintiff must prove the following:

(1) that he was at least forty years old at the time of his discharge;

(2) that he was discharged;

(3) that he was qualified to perform the job from which he was dismissed; and

(4) that he was replaced by a substantially younger employee.

See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 116 S.Ct. 1307, 1310 (1996). Plaintiff's replacement was four years younger than Plaintiff. He was not,

therefore, substantially younger, and Plaintiff is precluded as a matter of law from establishing a *prima facie* case of discriminatory discharge. See Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003) ("an age difference of six years or less between an employee and a replacement is not significant").

As the Court has noted, however, Plaintiff also alleges that Defendant subjected him to treatment that was less favorable than that accorded to significantly younger employees in the April 2003 restructuring, his placement on an improvement plan in July 2003, and his discharge. Absent direct evidence of an intent to discriminate, Plaintiff must prove his case on the basis of circumstantial evidence.

In order to prove a claim of disparate treatment in the terms and conditions of employment, a plaintiff must show that the employer treated him differently than it treated a similarly situated employee from outside his protected class. See Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992)(citations omitted). In order to establish a *prima facie* case of disparate treatment, a plaintiff must show (1) that he is a member of the protected class and (2) that the employer treated him differently than a similarly situated employee from outside his protected class. See id. In order to do so, a plaintiff must identify evidence that tends to show, *inter alia*, that he is similarly situated in all material respects to the employees to whom he compares himself. See Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). See also Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). The burden of proof with respect to the issue of

comparability rests upon Plaintiff, who must "produce sufficient affirmative evidence to establish that the . . . employees with whom []he compares [his] . . . treatment were 'similarly situated. . . .'" Mitchell, 964 F.2d at 583.

If a plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the alleged employment action. See Burdine, 450 U.S. at 253. The burden of persuasion, however, remains at all times upon the plaintiff. See Burdine, 450 U.S. at 256; Haynes v. Miller, 669 F.2d 1125, 1126-27 (6th Cir. 1982). Accordingly, once the employer meets its burden of going forward, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that defendant's articulated reason for the adverse action is mere pretext. See Burdine, 450 U.S. at 254-56; McDonnell Douglas, 411 U.S. at 804; Wrenn, 808 F.2d at 501; Henry v. Lennox Industries, 768 F.2d 746 (6th Cir. 1985). "There are no hard and fast rules as to . . . what evidence is needed in order to establish pretext." Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 97 (6th Cir. 1982). The United States Court of Appeals for the Sixth Circuit has identified three models for proving pretext:

    (1)    evidence that the reasons stated by the defendant had no basis in fact;

    (2)    evidence that those reasons did not actually motivate the adverse employment action; and

    (3)    evidence that those reasons were insufficient to warrant the adverse employment action.

11

See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994)(citing McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)). In Kline v. Tennessee Valley Authority, 128 F.3d 337, 346 (6th Cir. 1997), the court clarified that

> when the first or third findings of pretext are demonstrated, a court is permitted to infer discrimination from the circumstances. Thus, when a plaintiff proves that the defendant's proffered reasons either have no basis in fact or are insufficient to motivate [the adverse action], a permissive inference of discrimination arises.

(Citations omitted). The court distinguished those two situations from the second pretext model identified in Manzer:

> the two situations discussed above [are distinguished] from the situation when the reasons offered by the defendant do not actually motivate the [adverse action]. In this situation, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate [the adverse action]. . . . [I]n this situation, a plaintiff is required to introduce additional evidence of discrimination.

Kline, 128 F.3d at 346 (citations and quotation marks omitted; emphasis in original). The court stated that, unless the plaintiff offers evidence of the type identified in the first or third Manzer model, the plaintiff must "introduce additional evidence of discrimination" in order to refute the defendant's stated reason for the adverse employment action. Id.

Plaintiff cannot establish a *prima facie* case of disparate treatment with respect to the ultimate termination of his employment. He disputes Defendants' reasons for the termination[2], but he has not attempted to identify a single other Account Executive who was counseled by Jack Rupprecht and failed to respond to Mr. Rupprecht's follow-up e-mails. He has not identified evidence of post-improvement plan performance by either of the other Account Executives placed on such plans in July 2003 for purposes of comparing his treatment at the hands of Defendants to that of other similarly situated employees. His age discrimination claims based upon his discharge fail for those reasons.

As regards his assignments in the April 2003 restructuring and his placement on an improvement plan in July 2003, Plaintiff has identified evidence of similarly situated significantly younger employees whom Defendant treated more favorably. Indeed, Defendant concedes that Plaintiff was not assigned two of his most lucrative accounts, while most Account Executives were assigned the accounts on which they spent the greatest percentage of their time. Defendant also concedes that it declined to place a number of Account Executives without sales post-restructuring on improvement plans. Many of those Account Executives were significantly younger than Plaintiff.

---

[2] Plaintiff attempts to create a genuine issue of material fact by introducing evidence in the form of his own affidavit suggesting that he took the steps recommended by Mr. Rupprecht. In the same affidavit, however, Plaintiff admits that he did not respond to Mr. Rupprecht's e-mail. As Defendants' articulated reason for the discharge makes clear, the failure to respond to the e-mail and the failure to make sales were the two central reasons for the decision.

Because Plaintiff can establish a *prima facie* case of age discrimination with respect to the 2003 restructuring and the July 2003 improvement plan, the burden is upon Defendants to articulate legitimate nondiscriminatory reasons for those alleged adverse employment actions.  See Burdine, 450 U.S. at 253.  They have stated that Plaintiff lost his two most lucrative accounts in the April 2003 restructuring because the clients had either complained about Plaintiff or asked that he be replaced.  With respect to their failure to place some Account Executives with similar sales on improvement plans in July 2003, Defendants state that they did not use improvement plans for very new Account Executives and that all but one of the employees identified by Plaintiff was very new.  The remaining Account Executive was, according to Defendants, in a position to recognize significant sales within the quota period, while Plaintiff was not.  Those are legitimate nondiscriminatory reasons.  The burden is, thus, upon Plaintiff to identify evidence of pretext.  See Burdine, 450 U.S. at 254-56.

Plaintiff has not identified evidence suggesting that the reasons articulated by Defendants for their actions had no basis in fact.  He has challenged the representation that the one Account Executive with greater seniority than his and no sales as of July 2003 had significant sales in the "funnel."  He has not, however, introduced evidence contradicting that identified by Defendants in support of that contention.  The evidence establishes unequivocally that at least one Account Executive from outside the protected class was placed on an improvement plan. Plaintiff has also failed to identify any evidence that the articulated reasons did not actually motivate Defendants in making the challenged

14

assignments in April 2003 or in placing Plaintiff on an improvement plan in July 2003, or that those reasons were insufficient to warrant the decisions. He cannot, therefore, establish pretext, and his claims of disparate treatment fail as a matter of law.[3] Defendants are entitled to summary judgment with respect to all of Plaintiff's age discrimination claims.

### 2. Breach of Contract

Plaintiff asserts a claim for breach of contract on the basis of Defendants' admitted refusal to pay him commissions in the approximate amount of $34,500 on 2003 sales. The contract underlying that claim is, apparently, an oral agreement because Plaintiff has not attached a written contract to his complaint in this matter or otherwise made such a document a part of the record.

The parties are in apparent agreement that Defendants were not obligated to pay commissions to employees who were discharged for cause. Neither party has identified evidence with respect to the applicable definition of "cause" in their agreement. Defendants argue that failures to make sales and to respond to e-mails from superiors are

---

[3] Defendants have argued that Plaintiff's claims based upon the April and July 2003 events are time-barred because they were not the subject of an EEOC charge filed within 300 days of their occurrence. See Janikowski v. Bendix Corp., 823 F.2d 945, 947 (6th Cir. 1987). Plaintiff has argued, somewhat convincingly, that those events were part of a continuous series of events leading to his discharge and that, accordingly, his claims based upon those events are timely. See Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992). The Court considers those claims herein as though they were timely without resolving the issue.

cause for discharge and that Plaintiff, having been discharged for those reasons, cannot prove a breach of contract.

The Court cannot resolve the breach of contract claim in the context of Defendants' motion for summary judgment. The evidence of the terms of the contract in question is incomplete. The Court will not assume that the parties intended "for cause" to mean "for reasons not prohibited by law" in the absence of evidence of such intent. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's claim for breach of contract is not well-taken.

### D. Conclusion

For the reasons stated herein, Defendants' motion for summary judgment (Doc. 22) is hereby **GRANTED**, in part, and **DENIED**, in part. The motion is **GRANTED** with respect to all of Plaintiff's claims with the exception of his breach of contract claim against McKesson Corporation and McKesson Information Solutions, LLC. Plaintiff alleges that the amount of unpaid commissions is $34,500. Because the claim is based upon state law and the amount in controversy does not exceed $75,000, this Court does not have original jurisdiction over the claim. The Court, therefore, declines to exercise jurisdiction over the remaining claim pursuant to 28 U.S.C. § 1367(c)(3) and

hereby **DISMISSES** the breach of contract claim without prejudice.  This action is

**CLOSED** on this Court's docket.

       **IT IS SO ORDERED.**

                                                                                      /s/
                                            Sandra S. Beckwith, Chief Judge
                                            United States District Court